UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DEBRA A. BURNS,

                              Plaintiff,

              v.                                        6:05-CV-1376

OREN F. COOK, individually, and in his former
official capacity as Superintendent of Adirondack
Central School District; BOARD OF EDUCATION
OF ADIRONDACK CENTRAL SCHOOL DISTRICT;
and ADIRONDACK CENTRAL SCHOOL DISTRICT,
                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

DONALD R. GERACE, ESQ.
Attorney for Plaintiff
2615 Genesee Street
Utica, New York 13501

FERRARA, FIORENZA, LARRISON,          MILES G. LAWLOR, ESQ.
BARRETT & REITZ, P.C.
Attorneys for Defendants
5010 Campuswood Drive
East Syracuse, New York 13057

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

        Plaintiff Debra A. Burns ("plaintiff" or "Burns") brings this action against defendants

Oren F. Cook ("Cook"), the Adirondack Central School District Board of Education ("Board of

Education"), and the Adirondack Central School District ("District") under various federal,

state, and common law theories of recovery.  Specifically, plaintiff claims that defendants (1) retaliated against her for engaging in constitutionally protected speech in violation of 42 U.S.C. § 1983, the First Amendment to the United States Constitution, and article 1, section 8, of the New York State Constitution; (2) violated her substantive due process rights in contravention of the Fourteenth Amendment; (3) denied her equal protection of the laws in violation of both the Fourteenth Amendment and article 1, section 11, of the New York State Constitution; (4) failed to provide reasonable accommodations to her physical limitations in violation of section 102 of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112; (5) took adverse personnel actions against her for disclosing what she believed to be improper governmental conduct to governmental bodies, in violation of section 75-b of the New York Civil Service Law; (6) defamed her; (7) damaged her property interests and professional reputation; and (8) intentionally caused her to suffer emotional distress.[1]

Defendants move to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be granted.  Plaintiff opposes.  Oral arguments were heard on March 10, 2006, in Utica, New York.  Decision was reserved.

## II. **FACTS**[2]

Plaintiff has been employed by the District as a secretary-typist since 1991, a position which she holds to this day.  She attained status as a permanent civil service

---

[1] This numbering does not necessarily correspond to the numbered causes of action in the complaint.

[2] Since defendants move pursuant to Rule 12(b)(6), the following facts are taken directly from the complaint and stated as fact, as opposed to allegation.  It should be noted that only plaintiff's factual allegations, as opposed to conclusory allegations or legal conclusions, are taken as true.  See Pt. III.A. infra.

employee under New York law on April 13, 1993, and is a member of the non-teaching personnel union.

In April 1995, plaintiff suffered a myocardial infarction and has since suffered from a heart condition and related illness (the details of which are not specified in the complaint). Thereafter, she notified the District of her heart condition and need for reasonable accommodations. In June 1995, plaintiff's full-time secretary-typist position was reduced to a half-time position because of her medical condition.

In May 2001, plaintiff was notified by the District Superintendent that her half-time secretary-typist position would be eliminated. On July 1, 2001, plaintiff's position was in fact eliminated. Prior to and following the elimination of her position, plaintiff informed the District that she was entitled to "bump" into an existing full-time typist position pursuant to New York State Civil Service Law and the terms of her collective bargaining agreement. (Compl. ¶ 22.) The District refused to reappoint her to an existing full-time typist position. As a result, plaintiff contacted the Oneida County division of the New York State Department of Civil Service ("Civil Service") and notified that body of the District's actions, which she believed constituted a violation of her seniority rights. Civil Service then notified the District that plaintiff did in fact have a right to an existing full-time typist position. In August 2001, the District offered plaintiff an existing full-time position at the District's middle school, but informed her that because of her medical condition she would work only four hours per day instead of a normal seven-hour day. Plaintiff accepted this position.

Plaintiff did not begin her new employment at the middle school until October 1, 2001. Because she was not employed by the District from July 1, 2001, until that date, plaintiff lost vacation time, personal leave time, holiday time, and other fringe benefits. As a

result, plaintiff contacted the Civil Service and complained about the District's delay in reemploying her.

In February 2002, plaintiff provided to the District a note from her physician stating that he had never advised the District to remove plaintiff from the workplace, that she had been performing her duties without a problem, and that her condition required only that she take periodic rest through the regular vacation process.

In May 2002, plaintiff informed the District Superintendent and Board of Education that she believed they were violating her statutory and contractual rights by withholding the fringe benefits, and requested that such benefits be restored retroactive to July 1, 2001. Shortly thereafter, plaintiff was advised, by whom it is unclear, that the District was going to "get rid of her" because of her communications with the Civil Service.  (Compl. ¶ 29.)

On October 6, 2002, Cook became the District Superintendent.  On November 13, 2002, he informed plaintiff that he was going to re-title a full-time labor aide position at the middle school as a four-hour typist position and transfer her there.  Plaintiff told Cook, in the presence of "others," that she would not consent to such a transfer because she believed it was in violation of her statutory and contractual rights.  (Compl. ¶ 33.)  In December 2002, Cook denied plaintiff the use of personal leave time when her mother passed away, requiring her to use vacation time instead.  In April 2003, Cook denied plaintiff the use of both personal leave and vacation time to rest in accordance with her physician's orders, requiring her to take unpaid leave instead.  Shortly thereafter, plaintiff suffered another heart attack which required a catheterization and an extended period of time off for recuperation.

In July 2003, plaintiff requested that the District make reasonable accommodations

so that she could return to work.  She then became aware, how it is unclear, that several District employees had been given access to her medical records and thereby gained knowledge of her medical condition.  She was also informed, by whom it is unclear, that the District Business Manager considered her to be a liability to the District and wished to keep her from returning to work.  Nonetheless, plaintiff returned to her four-hour position at the middle school, and at the request of the District, actually worked seven-hour days for several months during the 2003-04 school year.

During the 2003-04 school year, plaintiff publicly supported her union president's candidacy for a position on the Board of Education.  Plaintiff voiced her support for the candidate "in the general community, at meetings and at social occasions."  (Compl. ¶ 39.) Specifically, plaintiff handed out fliers to other District employees and asked them to support the candidate in the May 2004 election.  Cook and certain members of the Board of Education supported a candidate running in opposition to plaintiff's union president. Sometime during the spring of 2004, Cook reprimanded plaintiff for publicly endorsing her union president's candidacy.

On April 7, 2004, Cook informed plaintiff by letter that her position would be abolished effective July 1, 2004.  In the letter, Cook acknowledged plaintiff's seniority rights and asked her to provide a letter from her physician stating that she was capable of performing the duties required of a District typist.  Shortly thereafter, plaintiff provided a letter from her physician clearing her to work six and a half hours per day initially, and later the full seven hours per day.  At some point, the letter was disseminated to several District employees and non-employees without plaintiff's consent.

On April 23, 2004, Cook informed plaintiff during a meeting between them that she would continue to work four-hour days at the middle school position.  Plaintiff expressed her desire to work full seven-hour days.  After the middle school Principal indicated that she wanted plaintiff to work in a full-time capacity, Cook verbally agreed to place plaintiff in a full-time position and stated that he would memorialize his decision in a letter to all those concerned.  During this meeting, plaintiff and "others" notified Cook of the unauthorized release of her medical information to District employees and non-employees.  (Compl. ¶ 45).

On May 3, 2004, plaintiff sent a letter to Cook memorializing the terms discussed at the April 23 meeting and requested that he send her written verification of such terms. However, on May 14, 2004, plaintiff was called to another meeting with Cook where she was informed that her four-hour position at the middle school was not going to be abolished on July 1, 2004.  Thus, she would keep her four-hour position rather than be reassigned to the full-time position.  Cook then informed plaintiff that if she became interested in a full-time position in the future, she could submit a request for the same when such positions became available.

On May 18, 2004, a full-time typist position became available at the middle school. Shortly thereafter, plaintiff notified Cook that she wished to "bump" into the newly open full-time position at the middle school.  On June 3, 2004, Cook denied plaintiff's request to be reassigned to that position.  On June 21, 2004, plaintiff complained to the Civil Service about Cook's denial of her request and filed a grievance pursuant to the terms of the collective bargaining agreement between her union and the District.  Cook denied her grievance that same day.

Meanwhile, District employees with less seniority than plaintiff were placed in full-time typist positions effective July 1, 2004.  On July 7, 2004, plaintiff appealed Cook's denial of her request to the Board of Education.  On August 17, 2004, Cook requested that plaintiff provide another letter from her physician indicating that she was capable of performing the duties required of a full-time typist.  On August 23, 2004, plaintiff complied with this request. On September 23, 2004, the Board of Education notified plaintiff that it supported Cook's decision pertaining to the denial of her grievance.

On or about December 15, 2004, plaintiff filed a notice of claim in state court. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 19, 2005, and received a notice giving her the right to sue on August 1, 2005.  She filed this action on November 1, 2005.

## III.  DISCUSSION

### A.  Motion to Dismiss Standard

On a Rule 12(b)(6) motion to dismiss, the allegations in the complaint are accepted as true and all reasonable inferences must be drawn in the plaintiff's favor.  Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998); Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995).  However, factual allegations must be distinguished from "[c]onclusory allegations or legal conclusions masquerading as factual conclusions," as the latter will not be accepted as true.  Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation marks omitted).  The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  In this regard, Federal Rule of Civil Procedure 8(a) provides, in relevant part, "[a]

pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief, and [ ] a demand for judgment for the relief the pleader seeks." Fed. R. Civ. P. 8(a). Thus, the pleading standard is undoubtedly a liberal one. Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998). In more definite terms, a plaintiff's complaint will be dismissed for legal insufficiency only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957).

### B. Free Speech Retaliation Claims[3]

Defendants move to dismiss plaintiff's free speech retaliation claims, both state and federal, on the ground that she has failed to state a claim upon which relief can be granted. In order to make out a prima facie case of First Amendment retaliation under § 1983, a plaintiff must demonstrate the following: (1) her speech was constitutionally protected; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected speech and the adverse employment action such that the speech was a motivating factor in the employer's decision to take the adverse action. Mandell v. County of Suffolk, 316 F.3d 368, 382 (2d Cir. 2003) (citing Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999); Locurto v. Safir, 264 F.3d 154, 166 (2d Cir. 2001)). If a plaintiff can make out a prima facie case, the employer can nonetheless escape liability by demonstrating that the speech was likely to disrupt governmental activities, the interests in preventing the disruption outweigh the

---

[3] While the New York Constitution generally affords greater protection than the federal constitution with regard to speech, see O'Neill v. Oakgrove Constr., Inc., 71 N.Y.2d 521, 528-29 n.3 (1988), claims of free speech retaliation under the New York State Constitution are governed by the same principles that apply under the Federal Constitution, see Pico v. Bd. of Ed., Island Trees Union Free School Dist., 474 F. Supp. 387, 394 (E.D.N.Y. 1979). Therefore, the following analysis is couched in terms of federal constitutional principles only.

value of the speech, and the adverse action was motivated by the potential disruption as opposed to the speech itself.  Mandell, 316 F.3d at 382-83 (citing Locurto, 264 F.3d at 166). The only issues worthy of discussion in this case are (1) whether plaintiff's speech is constitutionally protected speech, and (2) whether she suffered an adverse employment action.[4]

### 1. Protected Speech

Speech is protected under the First Amendment when it can be "fairly characterized as constituting speech on a matter of public concern."  Connick v. Myers, 461 U.S. 138, 146, 103 S. Ct. 1684, 1690 (1983); Morris, 196 F.3d at 110.  Speech is on a matter of public concen if it relates to "any matter of political, social, or other concern to the community." Connick, 461 U.S. at 146, 103 S. Ct. at 1690; Morris, 196 F.3d at 110.  To be sure, the question of whether speech relates to a matter of public concern is a question of law to be determined by the court; thus, consideration of such a question is proper upon a Rule 12(b)(6) motion to dismiss.  Connick, 461 U.S. at 147-48 n.7, 103 S. Ct. at 1690 n.7.  In answering this question, a court must look to the content, form, and context of the speech, as well as the plaintiff's motive for speaking and "attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose."  Lewis v. Cohen, 165 F.3d 154, 163-64 (2d Cir. 1999).

---

[4] In First Amendment retaliation cases, the issue of causation is usually one for the fact-finder because it often turns on circumstantial evidence and credibility of witnesses.  Plaintiff is not required at this stage to prove causation; rather, she must simply allege causation.  In this case, plaintiff alleges facts which could lead a reasonable fact-finder to find a causal connection between the speech and the adverse actions. Thus, it cannot be said as a matter of law that no such causal connection exists.

Also, defendants have not made any showing that plaintiff's speech was likely to disrupt governmental activities, the interests in preventing the disruption outweigh the value of her speech, or that the adverse actions were motivated by the potential disruption and not the speech itself.  Indeed, this is not the proper occasion to attempt to make such showings as it would entail the presentation of evidence and determination of factual issues and this is generally not permitted on a Rule 12(b)(6) motion.

In this case, plaintiff claims that she was retaliated against for complaining that defendants violated her statutory and contractual rights by refusing to place her in a full-time position.  Specifically, when the District terminated plaintiff's half-time position on July 1, 2001, she advised defendants that she was entitled to move into a full-time position pursuant to the New York State Civil Service Law and her collective bargaining agreement.  After the District initially refused to place plaintiff in a full-time position, she complained to the Oneida County division of the New York State Department of Civil Service ("Civil Service").  In January and May 2002, plaintiff contacted Civil Service and complained that the District owed her benefits from July 1, 2001 until October 1, 2001.  In November 2002, plaintiff told Mr. Cook that she would not consent to a transfer to the middle school because she believed it was in violation of her statutory and contractual rights.  In April 2004, plaintiff notified Mr. Cook that she believed her medical information had been improperly released to others. Finally, in June and July 2004, plaintiff again complained to Civil Service and the Board of Education regarding Mr. Cook's refusal to reassign her to a full-time position.

Even a cursory examination of the content, form, and context of this speech, as well as plaintiff's apparent motivation for engaging in it, clearly indicates that it is not related to a matter of public concern.  The content of her speech relates to her position with the District, benefits she was allegedly owed, and the alleged release of her medical information -- all matters of personal interest.  Plaintiff communicated this speech in a private and direct manner with no apparent intention of voicing her discontent to the public at large.  Moreover, there is nothing in the complaint which indicates that plaintiff was motivated by anything other than her own personal interests.  The fact that her speech concerned statutory and contractual rights, benefit entitlements, and medical privacy rights presumably enjoyed by

other District employees is not enough to make it a matter of public concern.  Plaintiff was

not speaking as an advocate for District employee rights, or even as a concerned citizen;

rather, she sought to redress personal employment grievances.

Plaintiff also claims that defendants retaliated against her for publicly supporting her

union president's candidacy for a position on the Board of Education during the 2003-04

school year.  At this time, plaintiff voiced her support for the candidate "in the general

community, at meetings and at social occasions."  (Compl. ¶ 39.)  Specifically, plaintiff

handed out fliers to other District employees and asked them to support the candidate in the

May 2004 election.  This is perhaps the quintessential example of speech related to a matter

of public concern.  The content, form, and context of this speech relate to a political matter

affecting the broader community.  Moreover, her motivation for engaging in this speech, at

least in theory, was to inform the public of her union president's candidacy and also,

presumably, his stance on the issues.  This benefitted not only plaintiff herself, but also the

community at large.

Thus, as a matter of law, plaintiff's public support of the candidate running for a

position on the Board of Education is protected speech under First Amendment retaliation

law.

### 2. <u>Adverse Employment Action</u>

A plaintiff claiming First Amendment retaliation must also demonstrate that she

suffered an adverse employment action.  The term "adverse employment action" refers not

only to discharge, but also to demotion, refusal to hire or promote, reduction in pay, and

reprimand. <u>Katuczky v. City of White Plains</u>, 57 F.3d 202, 208 (2d Cir. 1995) (citing <u>Rutan v.</u>

<u>Republican Party of Ill.</u>, 497 U.S. 62, 75, 110 S. Ct. 2729, 2737 (1990)).  A reassignment or

transfer qualifies as an adverse action where in fact it constitutes a demotion; conversely, a refusal to reassign or transfer qualifies as an adverse action where in fact it constitutes a refusal to promote.  See Bernheim v. Litt, 79 F.3d 318, 325 (2d Cir. 1996).  In other words, an employer will not be shielded from liability for First Amendment retaliation simply by couching the action in terms of "reassignment" or "transfer."  See id.  Courts must look to the facts, e.g., differences in job description or title, change in days or hours worked, change in salary or benefits, etc., to determine the true nature of an employment action.

Since the only protected speech in this case is that which relates to plaintiff's public support of her union president's political candidacy, the ensuing consideration of adverse employment actions is limited to those allegedly taken in response to this speech.  Plaintiff claims that she supported her union president's candidacy for a position on the Board of Education throughout the 2003-04 school year and, as a result, was "reprimanded" by Cook. (Compl. ¶ 40.)  Plaintiff does not elaborate as to how Cook's actions adversely affected her employment situation; however, since a reprimand is generally held to constitute an adverse employment action, see Katuczky, 57 F.3d at 208, and at this stage the plaintiff's complaint must be liberally construed, she has sufficiently alleged the occurrence of an adverse employment action.  Moreover, plaintiff claims that on June 3, 2004, Cook denied her request to be reassigned to a full-time position with the District.  At the time she made the request, plaintiff held a typist position at the middle school which required that she work four hours per day.  The position she sought was a full-time position requiring seven hours of work per day. While plaintiff does not directly state in her complaint that the full-time position represents a more desirable employment situation, e.g., increased salary, additional benefits, job security, etc., presumably it does.  What is made apparent in the complaint is that half-time typist

positions in the District, or at least those held by plaintiff, are often prone to elimination, re-titling, and other such actions at the whim of the District.  The apparently highly unstable nature of the half-time typist position supports the notion that the full-time position sought by plaintiff was indeed a more desirable position.  Thus, the facts indicate that Cook's refusal to reassign plaintiff was really a refusal to promote, bringing it within the class of adverse employment actions recognized by courts.  Therefore, plaintiff has sufficiently alleged the occurrence of two adverse employment actions in retaliation for her protected speech.

Thus, as a matter of law, plaintiff's public support for her union president's candidacy is protected speech under First Amendment retaliation law, and she alleges facts sufficient to withstand a Rule 12(b)(6) motion as to all other elements of this claim.  Therefore, defendants' motion to dismiss plaintiff's free speech retaliation claims, as they relate to that speech, will be denied.

### C. <u>Substantive Due Process Claim</u>

Defendants move to dismiss plaintiff's substantive due process claim on the ground that she has failed to state a claim upon which relief can be granted.  The Fourteenth Amendment provides: "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  Out of this constitutional provision has arisen the doctrine of substantive due process, which protects against government conduct that truly "shocks the conscience" of the court.  <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 834, 118 S. Ct. 1708, 1710 (1998) (citing <u>Rochin v. California</u>, 342 U.S. 165, 172-73, 72 S. Ct. 205, 209-10 (1952)).  In other words, substantive due process only protects against conduct that is "so outrageously arbitrary as to constitute a gross abuse of governmental authority."  <u>Natale v. Town of Ridgefield</u>, 170 F.3d 258, 263 (2d Cir. 1999);

see also Lewis, 523 U.S. at 846, 118 S. Ct. at 1716 (substantive due process only protects against "the most egregious official conduct"); c.f. Lowrence v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994) (substantive due process does not protect against government personnel decisions that are merely "incorrect or ill-advised").

   In this case, plaintiff alleges that defendants continually refused her requests to be transferred to a full-time position despite her seniority rights, used her physician's recommendations as a pretext for transferring her to the middle school, unnecessarily delayed her reappointment to a full-time position and denied her benefits during that time, denied her use of personal leave time at the time of her mother's passing, denied her request for vacation time despite her physician's orders suggesting rest by use of accrued vacation time, shared her medical records and confidential letters with unauthorized persons, reprimanded her for supporting her union president's candidacy for a position on the Board of Education, and generally acted in an "angry, brusque and physically threatening" manner toward her.  The most troubling of these allegations is that defendants shared her medical records with unauthorized persons.  At this stage, that allegation alone is sufficient to state outrageous and arbitrary government conduct.

   Moreover, whether defendants' conduct constitutes arbitrary, egregious, and otherwise conscience-shocking conduct depends on defendants' states of mind when they engaged in such conduct.  See O'Connor v. Pierson, 426 F.3d 187, 202-04 (2d Cir. 2005). For example, if the alleged conduct was motivated by spite and served no rational governmental purpose it would fall within that category of conduct against which the substantive due process doctrine protects.  See id. at 203.  On the other hand, if the conduct was well-intentioned or merely negligent, substantive due process would not apply.  See id.

However, since this issue cannot possibly be determined on a Rule 12(b)(6) motion, it cannot be said as a matter of law that defendants' conduct falls outside that which is contemplated by the substantive due process doctrine.

To state a substantive due process claim, a plaintiff must also allege that the governmental conduct deprived her of a protected right.  O'Connor, 426 F.3d at 200.  One such protected right is the individual right to privacy, which includes the right to confidentiality.  Id. at 201 (citing Whalen v. Roe, 429 U.S. 589, 598-600, 598 n.23, 97 S. Ct. 869, 876-77, 876 n.23 (1977); Doe v. City of New York, 15 F.3d 264, 267 (2d Cir. 1994)).  In this case, assuming that plaintiff's allegations regarding the release of her medical records are true, plaintiff's privacy and confidentiality rights were clearly infringed upon.  See O'Connor, 426 F.3d at 201.  Thus, it cannot be said as a matter of law that plaintiff has failed to state a claim upon which relief can be granted.

Therefore, defendants' motion to dismiss plaintiff's substantive due process claim will be denied.

### D. Equal Protection Claims

Defendants move to dismiss plaintiff's equal protection claims on the ground that she has failed to state a claim upon which relief can be granted.  The Fourteenth Amendment provides, in relevant part, that: "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  In order to state an equal protection claim, a plaintiff must allege (1) she was treated differently than other similarly situated individuals, and (2) such treatment was motivated by an intention to discriminate on the basis of her membership in a protected class, or to punish or inhibit the

exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995).

In this case, plaintiff's allegation that defendants "treated her differently than other typists" (Compl. ¶ 59) is sufficient to withstand a Rule12(b)(6) challenge as to the first prong of the equal protection test.  While she does not provide specific factual information as to who these other typists are and why they are similarly situated, the fact that they are typists is enough to support the allegation that they were similarly situated at this stage.  Plaintiff also alleges that defendants' conduct was motivated by a desire to punish her for exercising her first amendment right to free speech, and constituted discrimination "based upon her disability."  (Compl. ¶ 61.)  Because defendants' motivation is largely a question of fact, plaintiff sufficiently alleges improper motivation at this stage.  Since state constitutions must provide at least as much protection as the Federal Constitution, plaintiff's equal protection claim under the New York State Constitution is also sufficiently stated.

Therefore, defendants' motion to dismiss plaintiff's equal protection claims will be denied.

### E.  ADA Claim

Defendants move to dismiss plaintiff's ADA claim on the ground that she has failed to state a claim upon which relief can be granted because she failed to timely file her EEOC charge of discrimination.  Before an aggrieved party can properly file an ADA discrimination claim in federal court, they must jump through a number of procedural hoops.  See 42 U.S.C. §§ 12117(a) & 2000-e.  For example, an aggrieved party must file a charge of discrimination with the EEOC within 180 days of the alleged act of discrimination; or, if the party has instituted proceedings before a state or local agency with the authority to grant relief in such

a matter, the party must file a charge with the EEOC within 300 days of the alleged act of discrimination.  42 U.S.C. § 2000-e(5)(e)(1).  If these procedural requirements are not met, the action must be dismissed as untimely.  <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 108-09, 122 S. Ct. 2061, 2070 (2002).

In this case, plaintiff filed a Notice of Claim in state court in December 2004, giving her 300 days from the date of the alleged act of discrimination to file with the EEOC.  The question then becomes: when exactly did the alleged act of discrimination occur?  Plaintiff states in her complaint that the discriminatory act in this case was defendants' refusal to place her in a full-time typist position.  The relevant sequence of events as described in the complaint is as follows: on June 3, 2004, Cook denied plaintiff's request to be reassigned to a full-time typist position; on June 21, 2004, plaintiff filed, and Cook denied, a written grievance complaining of his decision to deny her reassignment request; on July 7, 2004, plaintiff submitted the grievance to the Board of Education; on August 17, 2004, Cook requested that plaintiff provide a letter from her physician indicating that she was capable of performing the duties required of a full-time typist; on August 23, 2004, plaintiff complied with this request; on September 23, 2004, the Board of Education notified plaintiff that it supported Cook's decision pertaining to the denial of her grievance.

The Second Circuit has held that the limitation period set forth in the ADA, <u>see</u> 42 U.S.C. §§ 12117(a) & 2000-e(5), begins to run on the date the employee receives a definite notice of the alleged discriminatory act.  <u>Smith v. United Parcel Serv.</u>, 65 F.3d 266, 268 (2d Cir. 1995).  The commencement of grievance procedures by the employee after receiving such notice does not toll the limitation period.  <u>Hale v. New York State Dep't of Health</u>, 621 F. Supp. 941, 942 (S.D.N.Y. 1985) (citing <u>Electrical Workers v. Robbins & Myers, Inc.</u>, 429 U.S.

229, 240, 97 S. Ct. 441, 449 (1976)).  Thus, the alleged act of discrimination occurred on

June 3, 2004, when Mr. Cook definitively notified plaintiff that her request to be reassigned to

a full-time typist position was denied.  Because plaintiff did not file a charge of discrimination

with the EEOC until July 19, 2005, more than 300 days after the alleged act of discrimination

took place, her ADA claim must be dismissed as untimely.

Therefore, defendants' motion to dismiss plaintiff's ADA claim will be granted.[5]

### F.  New York Civil Service Law Claim

Defendants move to dismiss plaintiff's claim under New York Civil Service Law

§ 75-b on the ground that she has failed to sufficiently allege either a violation of a law, rule,

or regulation, or an adverse personnel action.  Section 75-b(2)(a) provides:

> A public employer shall not dismiss or take other disciplinary or other adverse
> personnel action against a public employee regarding the employee's
> employment because the employee discloses to a governmental body
> information: (i) regarding a violation of a law, rule or regulation which violation
> creates and presents a substantial and specific danger to the public health or
> safety; or (ii) which the employee reasonably believes to be true and
> reasonably believes constitutes an improper governmental action. "Improper
> governmental action" shall mean any action by a public employer or employee,
> or an agent of such employer or employee, which is undertaken in the
> performance of such agent's official duties, whether or not such action is within
> the scope of his employment, and which is in violation of any federal, state or
> local law, rule or regulation.

N.Y. Civ. Serv. Law § 75-b(2)(a).  Thus, in order to state a claim under § 75-b, plaintiff must

allege the following:  (1) an adverse personnel action; (2) disclosure of information to a

governmental body (a) regarding a violation of a law, rule, or regulation that endangers

public health or safety, or (b) which she reasonably believes to be true and which she

---

[5]  Because the ADA claim will be dismissed on this ground, neither the merits, nor the issue of
whether plaintiff timely filed this action within the 90 day limitation period set forth in 42 U.S.C. §§ 12117(a) &
2000-e(5)(f)(1), need be addressed.

reasonably believes constitutes an improper governmental action; and (3) a causal connection between the disclosure and the adverse personnel action.  Section 75-b defines a "personnel action" as "an action affecting compensation, appointment, promotion, transfer, assignment, reassignment, reinstatement or evaluation of performance."  N.Y. Civ. Serv. Law § 75-b(1)(d).

In paragraphs 24, 26, and 51 of the complaint, plaintiff alleges that she complained to the Oneida County division of the New York State Department of Civil Service ("Civil Service") about the defendants' refusal to transfer her to a full-time position, as well as their delay in reappointing her to a four-hour position which resulted in a loss of benefits for plaintiff.  In paragraphs 28, 33, 45, 51, and 54 of the complaint, plaintiff alleges that she informed either the Superintendent or the Board of Education that they violated her statutory and contractual rights by refusing to transfer her to a full-time position, delaying in reappointing her to a four-hour position, and releasing her medical information to unauthorized persons.  Plaintiff alleges in the complaint that these actions constituted a violation of her statutory and contractual rights.  On a Rule 12(b)(6) motion, that plaintiff's belief that these actions occurred and constituted improper governmental conduct was reasonable is assumed.  Thus, plaintiff properly alleges disclosure of information to a governmental body which she reasonably believed to be true and to constitute improper governmental conduct.

Also, plaintiff alleges that she was adversely affected by defendants' repeated denial of her requests to be transferred to a full-time position, and their delay in reappointing her to a four-hour position which resulted in a loss of benefits.  These actions constitute adverse personnel actions as contemplated by § 75-b because they affect compensation,

appointment, and transfer.  Therefore, plaintiff properly alleges that defendants took adverse personnel actions against her.

Finally, paragraph 84 of the complaint provides that Cook "engaged in retaliatory personnel actions against Plaintiff after Plaintiff disclosed and/or threatened to disclose . . . Defendants' improper governmental actions."  (Compl. ¶ 84.)  If taken literally, this statement does little more than allege that the personnel actions occurred later in time than the disclosures; however, construing the complaint liberally, it is apparent that plaintiff meant to say that the personnel actions occurred after and because of her disclosures.  Thus, plaintiff sufficiently alleges the existence of a causal connection between her disclosures to the Civil Service and defendants, and the adverse personnel actions.

Therefore, defendants' motion to dismiss plaintiff's New York Civil Service Law claim will be denied.

### G.  Defamation Claim

Defendants move to dismiss plaintiff's eighth cause of action for defamation on the ground that she has failed to state a claim under the pleading requirements set forth in the New York Civil Procedure Law and Rules ("CPLR").  At the outset, it should be noted that under Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938), and its progeny, where a federal court exercises diversity or pendant jurisdiction over a state law claim, that court must apply state substantive law and federal procedural law.  See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427, 116 S. Ct. 2211, 2219 (1996); Gravatt v. City of New York, 54 F. Supp. 2d 233, 233-34 (S.D.N.Y. 1999).  Therefore, the liberal pleading requirements of the Federal Rules of Civil Procedure apply in this case, instead of the more stringent requirements of the CPLR.

To state a claim for defamation under New York law, a plaintiff must allege (1) a false and defamatory statement of fact, (2) "of and concerning" the plaintiff, (3) the publication of the statements to a third party, and (4) injury to the plaintiff.  Excellus Health Plan, Inc. v. Tran, 287 F. Supp. 2d 167, 173-74 (W.D.N.Y. 2003); Weldy v. Piedmont Airlines, Inc., 985 F.2d 57, 61 (2d Cir. 1993).  While the Second Circuit has abandoned the stringent in haec verba standard in defamation cases, to comply with the dictates of Rule 8(a) a plaintiff must still "afford [the] defendant sufficient notice of the communications complained of to enable him to defend himself."  Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986).

In this case, plaintiff claims that "Defendant Cook, members of the District's Board of Education and District employees, publicly at District meetings and in the local community intentionally, willfully and maliciously falsely accused Plaintiff of being physically unable to perform her duties as a secretary in the District."  (Compl. ¶ 86.)  As a result of this, plaintiff claims, she "has been defamed, slandered and damaged."  (Compl. ¶ 87.)  Plaintiff does not identify a particular statement made by a particular individual, the date or even time period of the alleged defamation, whether the statements were made orally or in writing, or provide any other contextual information concerning her allegation.  See Nickerson v. Commc'n Workers of Am. Local 1171, No. 5:04-CV-875, 2005 WL 1331122, at *7 (N.D.N.Y. May 31, 2005).  Also, plaintiff uses nothing but conclusory language in alleging injury.  Even under the liberal pleading requirements of Rule 8(a), plaintiff has failed to allege facts sufficient to meet them.

Therefore, defendants' motion to dismiss plaintiff's defamation claim will be granted.


**H.  "Damage to Property Interests and Professional Reputation" Claim**

Defendants' move to dismiss plaintiff's <u>ninth</u> cause of action for "damage to property interests and professional reputation" on the ground that it is essentially the same as the defamation claim and therefore superfluous.  While the complaint does not state the legal basis for such a claim, it will be considered as both a due process "stigma-plus" claim and a defamation claim.

The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "A person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause."  <u>Patterson v. City of Utica</u>, 370 F.3d 322, 329-30 (2d Cir. 2004).  However, a plaintiff can make a "stigma-plus" claim by showing that the government made stigmatizing statements calling into question her good name, reputation, honor, or integrity, and contemporaneously dismissed her from government employment so as to foreclose her freedom to seek other employment.  <u>See</u> <u>id</u>. at 330; <u>Donato v. Plainview-Old Bethpage Cent. Sch. Dist.</u>, 96 F.3d 623, 632-33 (2d Cir. 1996).  In such cases, a plaintiff is afforded procedural protections under the Fourteenth Amendment.

In this case, plaintiff alleges that her "career success has been put in jeopardy by the Defendants' outrageous conduct and retaliatory employment practices," and that "Defendant Cook and District employees endeavored to publicly embarrass and humiliate [her] by finding fault with [her] physical ability to perform her professional work."  (Compl. ¶ 89.)  Plaintiff has not alleged any stigmatizing statements made by defendants.  More importantly, plaintiff was never dismissed from government employment and her freedom to seek other employment

has not been foreclosed.  Thus, plaintiff has failed to state a claim of stigma-plus under the Due Process Clause.

As discussed at Part III.G <u>supra</u>, to state a claim of defamation a plaintiff must allege (1) a false and defamatory statement of fact, (2) "of and concerning" the plaintiff, (3) the publication of the statements to a third party, and (4) injury to the plaintiff.  <u>Excellus</u>, 287 F. Supp. 2d at 173-74; <u>Weldy</u>, 985 F.2d at 61.

In this case, plaintiff alleges that her "career success has been put in jeopardy by the Defendants' outrageous conduct and retaliatory employment practices," and that "Defendant Cook and District employees endeavored to publicly embarrass and humiliate [her] by finding fault with [her] physical ability to perform her professional work."  (Compl. ¶ 89.)  Plaintiff has failed to allege facts which, if true, would satisfy any of the elements of defamation listed above, with the possible exception of the element of injury.  Thus, plaintiff has failed to state a claim of defamation with respect to her <u>ninth</u> cause of action.

Therefore, defendants' motion to dismiss plaintiff's "damage to property interests and professional reputation" claim will be granted.

## I. <u>Intentional Infliction of Emotional Distress</u>

Defendants move to dismiss plaintiff's intentional infliction of emotional distress claim on the ground that she has failed to state a claim upon which relief can be granted.  To state a claim for intentional infliction of emotional distress under New York law, a plaintiff must allege that the defendant, (1) by extreme and outrageous conduct, (2) intentionally or recklessly (3) caused plaintiff (4) severe emotional distress.  <u>See</u> <u>Fischer v. Maloney</u>, 43 N.Y.2d 553, 557 (1978) (adopting the elements as set forth in the Restatement (Second) of Torts).  The conduct must be "'so outrageous in character, and so extreme in degree, as to

go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

In this case, plaintiff alleges that Mr. Cook, District employees, and members of the Board of Education intentionally engaged in "defamatory, slanderous, retaliatory, harassing, hostile and discriminatory . . . actions for the purpose of inflicting upon the Plaintiff emotional distress and mental anguish." (Compl. ¶ 92.)  She also alleges that Mr. Cook's demeanor toward her was "angry, brusque and physically threatening" (Compl. ¶ 59), and that his actions were "harassing, arbitrary, capricious, malicious, willful, oppressive, in bad faith and for trivial, personal, political and improper reasons" (Compl. ¶ 62), and also "outrageous" (Compl. ¶ 63).  However, missing from the complaint are any allegations of specific actions that rise to the level of extreme and outrageous conduct.  In other words, despite plaintiff's portrayal of Mr. Cook's actions as extreme and outrageous by use of a plethora of conclusory adjectives, his conduct was not "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Fischer, 43 N.Y.2d at 557 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).  At best, his actions were discriminatory, arbitrary, and taken for improper reasons.  However, plaintiff has asserted separate causes of action which address such conduct.  Because it can be said as a matter of law that defendants' conduct was not extreme and outrageous, plaintiff has failed to state a claim upon which relief can be granted and a discussion of the adequacy of plaintiff's claim with respect to the other elements is unnecessary.

Therefore, defendants' motion to dismiss plaintiff's intentional infliction of emotional distress claim will be granted.

## IV. <u>CONCLUSION</u>

For the reasons discussed above, plaintiff has sufficiently stated a claim upon which relief can be granted with respect to her free speech retaliation claims, substantive due process claim, equal protection claims, and New York Civil Service Law claim.  However, she has not sufficiently stated her ADA claim, defamation and slander claim, "damage to property interests and professional reputation" claim, and intentional infliction of emotional distress claim.

Therefore, it is

ORDERED that

1.  Defendants' motion to dismiss will be GRANTED in part, and DENIED in part;

2.  Defendants' motion to dismiss plaintiff's <u>sixth</u>, <u>eighth</u>, <u>ninth</u>, and <u>tenth</u> causes of action is GRANTED;

3.  Defendants' motion to dismiss all other causes of action is DENIED;

4.  Defendants are directed to file and serve an answer to the <u>first</u>, <u>second</u>, <u>third</u>, <u>fourth</u>, <u>fifth</u>, and <u>seventh</u> causes of action on or before November 3, 2006.

IT IS SO ORDERED.

_____
United States District Judge

Dated: October 23, 2006
       Utica, New York.